UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BARBARA D. FLINT, | ) |
|                     Plaintiff, | ) |
| vs. | ) No. 1:11-cv-01480-MJD-TWP |
| MICHAEL J. ASTRUE Commissioner of the Social Security Administration, | ) |
|                     Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Barbara D. Flint requests judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. 42 U.S.C. §§ 416(i) and 1382c. For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.[1]

## I.     PROCEDURAL HISTORY

Flint filed her application for SSI on June 3, 2008, alleging a disability onset date of January 1, 2002. This claim was initially denied on October 8, 2008 and upon reconsideration on August 10, 2009. Thereafter, Flint requested a hearing, which was held on October 13, 2010 before Administrative Law Judge Kathryn D. Burgchardt (the "ALJ"). On January 25, 2011 the ALJ denied her application, and on September 16, 2011, the Appeals Council affirmed the ALJ's denial decision. The ALJ's decision is therefore the final decision of the Commissioner for

---

[1] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 636(c)(3).

1

purposes of judicial review.  Flint timely filed her Complaint with this Court on November 8, 2011.

## II. FACTUAL BACKGROUND AND MEDICAL HISTORY

Flint was fifty-three years old on the date of the ALJ's decision.  She completed four years of college and earned a bachelor's degree in general studies.  She has no past relevant work experience.  The evidence of record establishes that Flint has fibromyalgia, irritable bowel syndrome, degenerative disc disease of the lumbar spine, and carpal tunnel syndrome.  There is also some record of intermittent tinnitus, and Flint claims that she suffers from mental impairments, including memory loss.

Mrs. Flint has been diagnosed with fibromyalgia both by her treating physicians and consultative medical examiners.  On August 9, 2006, Flint received a neurological evaluation by Dr. Angeline Diokno on referral from her primary care physician, Dr. William Kleckner, in which she agreed with Dr. Kleckner's opinion that Flint suffered from fibromyalgia.  She also opined that Flint's subjective reports of memory loss may be related to fibromyalgia.

On September 13, 2008, Social Security consulting physician Dr. David King reported that Flint had problems with joint pain and fibromyalgia.  She also complained of diarrhea, memory problems and fatigue.  Dr. King noted that, despite her complaints, Flint was only taking a multi-vitamin.  In 2008 and 2009, Flint received treatment for her fibromyalgia in the form of chiropractic services, physical therapy services, and medication treatment.  Flint has also been diagnosed with irritable bowel syndrome resulting in chronic diarrhea by both her treating physicians and state consultative physicians.

Flint reported that she had mental impairments in the form of memory lapses and problems with concentration; however, the record only contains evaluations from state agency

psychological consultants for this issue.  In September 2008, Flint underwent a consultative psychological evaluation performed by Dr. R. Keith Green.  Dr. Green reported that Flint's affect was appropriate, she had normal mood, was cooperative and displayed an optimistic attitude, and had clear thinking.  He said that she reported subjective memory impairment, but it was not confirmed by tasks presented in the assessment.  Dr. Green diagnosed Flint with a pain disorder associated with both psychological factors and a general medical condition, and a cognitive disorder not otherwise specified ("NOS").  The record is void of any other mental health treatment that Flint received since her consultative psychological evaluation, and she also reported at the hearing that she was not receiving any mental health treatment,nor were any of the medications that she was taking used to treat a mental impairment.  In July 2009, Flint reported to one of her medical providers that although she experienced stress, she did not believe she was depressed.

### III.   DISABILITY STANDARD OF REVIEW

Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy considering her age, education, work experience, and limitations. 42 U.S.C. § 1382c(a)(3)(B).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is

not disabled, despite her medical condition and other factors. 20 C.F.R. §416.920(a)(4)(i).[2] At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, she is not disabled. 20 C.F.R. §416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, Subpt. P, App. 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. §416.920(a)(4)(iii).

In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. §404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. §416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. §416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent

---

[2] The Code of Federal Regulations contain separate sections relating to DIB and SSI that are identical in all respects relevant to this case. Citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.

evidence, … or that because of … missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

## IV.   THE ALJ'S DECISION

At step one, the ALJ found that Flint had not engaged in substantial gainful activity since the application date of June 3, 2008. As step two, the ALJ found that Flint had the following severe impairments: fibromyalgia, irritable bowel syndrome, degenerative disc disease of the lumbar spine, and carpal tunnel syndrome. She also found that tinnitus and mental impairments were only minimal limitations. At step three, the ALJ concluded that Flint does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ found that Flint has the residual functional capacity to perform light work with a number of restrictions, including only lifting up to ten pounds frequently and twenty pounds occasionally; standing or walking with normal breaks for a total of six hours in an eight hour workday; sitting with normal breaks for a total of six hours in an eight hour work day; performing pushing and pulling motions with her upper and lower extremities but within the weight restrictions given; preclusion from working with vibrations; and must have reasonable

access to the bathroom. At step five, the ALJ found that Flint has no past relevant work, but considering her age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. Therefore, the ALJ determined that Flint is not disabled.

## V. DISCUSSION

Flint presents four arguments as to why she believes that the ALJ committed reversible error. First, Flint argues that the ALJ's decision must be reversed because she was prejudiced by not plainly and intelligently waiving her right to counsel at the hearing. Second, she argues that the ALJ failed to support her conclusion that Flint's combined fibromyalgia, irritable bowel syndrome and impaired concentration did not render her totally disabled. Third, Flint argues that the ALJ's credibility determination was patently erroneous and contrary to Social Security Ruling 96-7p. Finally, Flint argues that the ALJ failed to support her step five determination that Flint could perform some jobs and is therefore not disabled.

### A. The claimant was not prejudiced by the invalid waiver of counsel

Flint argues that she did not plainly and intelligently waive her right to counsel at the hearing, and that she was prejudiced by her lack of representation because the ALJ failed to fulfill her duty to develop the record. She argues that the ALJ never mentioned the word "attorney" and only emphasized that there would be a lengthy postponement of her case if Flint chose to obtain an attorney. The ALJ also failed to advise Flint of the benefits of being represented by an attorney and failed to advise her that the fee could be limited to a contingency fee of twenty-five percent of her past due benefits. Flint claims she was prejudiced by her lack of an attorney because the ALJ failed to re-contact her or question her at the hearing regarding

her failure to comply with treatment for her fibromyalgia, thus constituting a failure to fully develop the record in accordance with Social Security Ruling 96-7p.

Social security claimants have a statutory right to counsel at disability hearings. 42 U.S.C. § 406. A claimant must be properly informed of this right, but may waive it if she is given sufficient information to intelligently decide whether to retain counsel or proceed *pro se*. *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991). "Information that will ensure a valid waiver of counsel includes an explanation of the manner in which an attorney can aid in the proceedings, the possibility of free counsel or a contingency arrangement, and the limitation on attorneys' fees to twenty-five percent of past-due benefits plus required court approval of the fees." *Id.* However, remand is not appropriate, even in the absence of a valid waiver, where the claimant was not prejudiced because the ALJ fully and fairly developed the record. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994).

In this case, the Commissioner concedes that the ALJ did not obtain a valid waiver of counsel because she did not explain the benefits that an attorney may provide, nor did she mention that Flint may have obtained free counsel, the possibility of a contingency agreement, or the limitation of fees to twenty-five percent of past-due benefits. However, the Commissioner argues that Flint was not prejudiced by the ALJ's alleged failure to inquire into why Flint did not comply with her fibromyalgia treatment, specifically her home exercises, which is the only aspect of the record that Flint argues that the ALJ failed to properly develop. The ALJ discussed records from one of Flint's medical providers that recommended that she engage in "daily stretching, walking, participate in an exercise program, and return to physical therapy" to manage her fibromyalgia pain. [R. at 17.] The ALJ did ask Flint whether she engaged in exercise, and Flint responded that she was supposed to be exercising but claimed she only has

the energy to do stretching. [R. at 36.] The Court finds that this was a sufficient inquiry into why Flint did not comply with her medical treatment, which consisted of home exercises, and no additional inquiry was warranted. The suggestion in Flint's brief that her failure to comply with medical treatment may have been a result of her inability to afford medical treatment is irrelevant in this situation, as the treatment in question was exercises to be done at home, which would not have cost Flint anything. Therefore, the Court finds that Flint was not prejudiced by lack of assistance from counsel and it is not a basis for remand.

### B. Substantial evidence supports the ALJ's step three determination

Flint next argues that the ALJ failed to support her finding that Flint was not disabled by her combined fibromyalgia, irritable bowel syndrome, and impaired concentration. Specifically, Flint claims that she met her burden of proving that her combined impairments rendered her totally disabled, that the ALJ erred by failing to summon a medical advisor to testify whether Flint's combined impairments medically equaled a listed impairment, and that the ALJ arbitrarily rejected treatment-examination evidence which proved disability.

Flint first contends that she has met her burden of proof by offering evidence that her combined impairments rendered her totally disabled. In her brief, however, Flint offers nothing but boilerplate language that the ALJ's decision is "obviously unfair" and must be reversed because it fails to build an accurate and logical bridge. [Dkt. 19 at 12.] Flint provides no analysis whatsoever to support her contention; therefore, the Court finds that argument is waived. *See Cadenhead v. Astrue*, 410 F. App'x 982, 984 (7th Cir. 2011) (citations omitted) (finding "undeveloped or unsupported contentions are waived").

Second, Flint contends that the ALJ failed to summon a medical advisor to testify regarding medical equivalence. This argument is without merit. The decision to use a medical expert is

8

discretionary; an ALJ may ask for and consider opinions from medical experts on the nature and severity of impairments, but there is no requirement in the regulations that she must do so. *See* 20 C.F.R. 416.927(f)(2)(iii). "If the ALJ believes that he lacks sufficient evidence to make a decision, he must adequately develop the record and, **if necessary**, obtain expert opinions." *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (emphasis added). Here, the record contained ample evidence to support the ALJ's finding.

Moreover, under Social Security Ruling ("SSR") 96-6p, a signature of a state agency medical or psychological consultant on a Disability Determination and Transmittal ("DDT") form "ensures that consideration by a physician (or psychologist) … has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." SSR 96-6p. The signature on a DDT form "conclusively establishes" that a medical consultant has considered the question of medical equivalence under the listings and the ALJ may rely upon the opinions of medical experts completing the DDT forms. *Scheck*, 357 F.3d at 700. Here, the record contains three DDT forms upon which the ALJ was permitted to rely that concluded that Flint's impairments did not medically equal a listed impairment. [R. at 51-53]. Therefore, the failure to summon a medical advisor was not in error.

Lastly, Flint contends that the ALJ ignored or arbitrarily rejected treatment evidence that proved Flint's combined impairments rendered her disabled. However, an ALJ is not required to discuss every piece of evidence submitted. *Martinez v. Astrue*, No. 2:10-CV-370-PRC, 2011 WL 4834252, at *7 (N.D. Ind. 2011) (citing *Clifford*, 227 F.3d at 870; *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004); SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996)). Flint claims that the ALJ only selectively considered the neurological evaluation of Dr. Diokno regarding her degenerative disc disease, memory loss, and fibromyalgia. Flint also claims that the ALJ

9

selectively considered evidence from Dr. King, who noted that Flint reported that she had difficulty with concentration and diagnosed her with fibromyalgia, and of Dr. Green, who diagnosed her with cognitive disorder NOS.  Flint overlooks the fact that the ALJ accepted the diagnosis of fibromyalgia and listed fibromyalgia as a severe impairment.  [R. at 11.]  However, a diagnosis of an impairment does not establish the severity of the impairment, and the Seventh Circuit has specifically stated that a diagnosis of fibromyalgia is insufficient, in and of itself, to establish disability.  *Estok v. Apfel*, 152 F.3d 636, 639-40 (7th Cir. 1998).

With regard to Flint's alleged cognitive impairment, the ALJ did address Dr. Green's report, which not only diagnosed her with cognitive disorder NOS, but also reported that her subjective reports of memory impairment were not confirmed during her performance of tasks in his assessment. [R. at 11-12, 255-58.]  The ALJ also cited to and discussed records from Dr. Diokno, which not only contained the information regarding Flint's memory loss cited in her brief, but also that Flint "[n]ormally does not have any problems with directions or getting confused while driving." [R. at 220.]  In addition, the records of her memory problems consist of subjective complaints to Dr. Diokno and Dr. Green, and the ALJ addressed the fact that Flint's complaints of memory loss were not confirmed in a psychological assessment or anywhere else in the record. [R. at 15.]

Finally, Flint claims that the ALJ selectively considered the medical-physical therapy evaluation by Dr. Soto which showed she had a positive straight leg raising test, which is evidence necessary to prove that she met Listing 1.04.  Flint herself mischaracterizes this evidence, as the report also states that her low back pain "seems to bother her only at certain times." [R. at 303.]  The Court finds that this evidence is not contrary to the ALJ's denial decision, and in sum finds the ALJ's step-three decision is supported by substantial evidence.

### C. The ALJ's credibility determination was not patently erroneous

Flint argues that the ALJ's credibility determination was patently erroneous because she rejected Flint's allegations of disability due to fibromyalgia, and that the determination was vague and perfunctory. She alleges that the ALJ did not make accurate findings concerning the seven factors in Social Security Ruling 96-7p, which the ALJ must consider in addition to the objective medical evidence. "[A]n ALJ cannot deny disability '*solely* because the available objective medical evidence does not substantiate the claimant's statements.'" *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (quoting 20 C.F.R. § 404.1529(c)(2)). Rather, the ALJ must consider the entire record giving specific reasons for the weight given to the claimant's statements. *Id.* at 517. The factors in SSR 96-7p include the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate or aggravate the symptoms; the type, dosage, effectiveness, and side effects of medications that the individual takes to alleviate pain or other symptoms; treatment, other than medication, that the individual receives or has received; any measures other than treatment the individual has used to relieve pain; and any other factors concerning the individual's functional limitations due to pain. SSR 96-7p.

While the ALJ's decision does contain the language cited in Flint's brief, Flint ignores the ALJ's analysis of her credibility that is discussed both before and after such statement. The ALJ cited to Flint's daily activities, including caring for her disabled husband, attending church, driving and watching online movies and shows. [R. at 14.] The ALJ also discussed the fact that sitting and standing for extended periods of time aggravates Flint's symptoms, but that she only takes a multi-vitamin, prescription Ibuprofen and over-the-counter Tylenol for her pain. [*Id.*] The ALJ cited to evidence of Flint's other treatments for her symptoms, including exercise,

chiropractic services, and physical therapy. [R. at 14-15.] There is nothing "vague" about the ALJ's credibility determination; the ALJ provided an adequate and specific explanation as to why she found Flint's statements regarding her pain and limitations to be not credible, which included the factors discussed above, as well as records showing that Flint had times where she did not require any medication for her severe impairments, and the fact that she was not complying with the recommended treatment by her medical provider. [R. at 17.]

Flint also ignores the fact that the ALJ did accept her fibromyalgia diagnosis and considered it to be a severe impairment. [R. at 11.] However, the diagnosis of an impairment alone does not establish the severity of the impairment and its resulting limitations, and it is the ALJ's job to make the factual determination as to whether the impairment causes such severe pain that the claimant cannot work full time. *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004). As stated above, the ALJ properly considered Flint's limitations as a result of her fibromyalgia—and other severe impairments—and adequately supported her credibility determination.

### D. The ALJ's step five determination is supported by substantial evidence

Finally, Flint argues that the ALJ's residual functional capacity omits all of her limitations due to pain caused by Flint's fibromyalgia, her cognitive disorder with confusion and disorientation, and her spine impairments limiting her ability to lift and carry, and does not accurately describe Flint's impairments. Based upon her RFC, the ALJ found that Flint could perform light work with some limitations.

Flint does not indicate what limitations the ALJ allegedly omitted that are not encompassed in the RFC determination, or what an accurate description of Flint's impairments would be. Because Flint has failed to develop this argument or cite to any evidence in the record, the Court

finds that it has been waived.  See U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim.")

Even if Flint did not waive this argument, the Court finds that the ALJ did provide substantial evidence for her RFC and step five determinations.  The ALJ thoroughly discussed the evidence in the record in making her RFC determination, and properly accounted for Flint's limitations due to her severe impairments in finding that she could perform light work with additional limitations.  [R. at 14-17.]  The ALJ accurately presented this RFC in her hypothetical to the vocational expert, who found that there were jobs in the economy that Flint could perform.  Therefore, the ALJ's step five determination is supported by substantial evidence.

## VI.    CONCLUSION

For the above stated reasons, the Commissioner's decision is **AFFIRMED**.

Date:   01/02/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov